## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FRANK CISNEROS, # 10132-040, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-cv-321-NJR |
| | ) | |
| T.G. WERLICH, | ) | |
| LT. SMITH, | ) | |
| TECHNICIAN HODGES, | ) | |
| TECHNICIAN SERIO, | ) | |
| JOHN DOE #1 (Nat'l Gang Intelligence | ) | |
| Director), | ) | |
| JOHN DOE #2 (Gang Association Drop | ) | |
| Out Case Manager), | ) | |
| CPT. PATTERSON, | ) | |
| CASE MANAGER BOWERS, | ) | |
| SARAH M. REVELL, | ) | |
| IAN CONNERS, | ) | |
| JOHN DOE #3 (Designation Security | ) | |
| Classification Center Agents/BOP), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Frank Cisneros is an inmate in the custody of the Federal Bureau of
Prisons ("BOP") who is currently incarcerated in the Marianna Federal Correctional
Institution ("Marianna") in Florida. He brought this action pursuant to *Bivens v. Six
Unknown Narcotics Agents*, 403 U.S. 388 (1971), claiming that he was wrongly held for a
prolonged period in the Special Housing Unit ("SHU") at the Federal Correctional
Institution located in Greenville, Illinois ("Greenville") and was denied placement at a
lower security prison located near his family.

1

Upon initial review, the Court dismissed Plaintiff's original Complaint (Doc. 1) without prejudice for failure to comply with Federal Rule of Civil Procedure 8. (Doc. 14). Plaintiff's First Amended Complaint (Doc. 15) is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff makes the following allegations in the First Amended Complaint: He was kept in administrative segregation for 27 months, during which he was not allowed contact visits or email access; had only 15 minutes per month of phone time; had no access to religious services; was denied library access on several occasions; was unable to work at a prison job where he could have earned wages; suffered back and knee problems due to the inability to exercise in the SHU; and was unable to earn points toward a lower custody classification. (Doc. 15, pp. 14-15). He asserts that all the Greenville Defendants (Werlich, Smith, Hodges, Serio, Patterson, and Bowers) violated his due process rights by keeping him confined in those conditions "when feasible alternatives were available," because they failed to follow procedures to re-evaluate his inmate classification and placement. (Doc. 15, pp. 14-15).

Plaintiff states that because he is a former gang member who assisted the

government, he faces a higher potential of harm while in prison. In spite of that history, the BOP's Designation Security Classification Center ("DSCC")[1] placed him in an "active gang" facility[2] when they should have known it housed members of Plaintiff's former gang and where harm to him was "almost certain." (Doc 15, p. 14). Over a 15-month period, Bowers (Greenville Case Manager) did not use procedures such as the "Management Variable (MGIV) evaluation" or a transfer to a Protective Custody ("PC") facility which would have mitigated this danger. (Doc. 15, p. 14). Bowers ignored Plaintiff's request for a MGIV transfer to a low or PC prison. Hodges (Greenville SIS Technician) denied Plaintiff entry into the "Gang Drop Out Process (GDOP)" because it would take too long. Smith (Greenville SIS Lt.) dissuaded Plaintiff from entering the GDOP and promised him placement at a PC facility where he could safely complete the GDOP. Patterson (Greenville Captain) and Werlich (former Greenville Warden) were responsible for the denials of due process because they knew about the custom at Greenville of dissuading inmates from entering the GDOP and condoned or turned a blind eye to it. Eventually Plaintiff was "forced off [the] compound by threats of violence" when another inmate arrived who knew about his history. *Id.*

Further, the Greenville Defendants (Werlich, Smith, Hodges, Serio, Patterson, and Bowers) denied Plaintiff meaningful periodic evaluations to determine whether he could return to general population in some BOP facility. (Doc. 15, p. 14). When Plaintiff

---

[1] The Court presumes that this reference is to the John Doe #3 Defendants (*see* Doc. 1, p. 3), although the statement of claim is not entirely clear.
[2] The Court assumes that Plaintiff is referencing Greenville as the "active gang" facility although the statement of claim does not explicitly say so.

questioned this, each Defendant told him they would not do anything until the NGIC (National Gang Intelligence Center)[3] did. The Greenville Defendants failed to contact the NGIC for status updates, and it was discovered after Plaintiff had spent 24 months in the SHU that there was no case file for him at the NGIC and the NGIC agent had retired. (Doc. 15, p. 14). Serio failed to turn in Plaintiff's final GDOP papers until August 2017, 15 months after starting the process. Smith told Plaintiff that the retired NGIC agent did not do her job. The NGIC Director failed to properly train/supervise the retired NGIC agent. Revell (BOP Regional Director) and Conners (BOP National Inmate Appeals Administrator) are liable because they knew of the Greenville Defendants' conduct and facilitated or approved it. (Doc. 15, pp. 9, 11, 14).

Additionally, Revell and Conners denied Plaintiff's right to be free from fear of harm by transferring him to Marianna, which is a "bad standing" facility, housing inmates who are not allowed to be placed at a GDOP facility. While there, Plaintiff had no running water for bathroom use for 3 days following Hurricane Michael and was denied regular recreation and programming after evacuation to USP-Yazoo City. (Doc. 15, p. 15). The facility was on a more restrictive lockdown which resulted on denial of showers, phone calls, and email access after admitting inmates who tested positive for COVID-19.

Finally, the NGIC Agency failed to remove the "inmate separation" between Plaintiff and his codefendant which prevented Plaintiff's placement in a GDOP facility;

---

[3] The National Gang Intelligence Center Director is designated as John Doe #1 herein. (Doc. 1, pp. 1-2).

the DSCC placed him at a prison "where inmates were not part of debriefing process,"

and Revell and Conners approved this conduct. (Doc. 15, pp. 13, 15).

Plaintiff seeks money damages and a transfer to a GDOP prison. (Doc. 15, p. 16).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following

claims in this *pro se* action:

> **Count 1:** Fourteenth Amendment due process claim against all Defendants for failing to process Plaintiff's requests to enter the GDOP and/or to transfer to a prison where he could participate in the GDOP, and/or to evaluate Plaintiff for placement in a PC or lower security prison or to general population elsewhere.

> **Count 2:** Fourteenth Amendment due process claim against all Defendants for keeping Plaintiff confined in the SHU at Greenville for 27 months, where his access to visitation, exercise, and other programs was restricted.

> **Count 3:** Eighth Amendment claim against Werlich, Smith, Hodges, Serio, Patterson, and Bowers for keeping Plaintiff confined in the SHU at Greenville for 27 months, where he suffered injuries as a result of his inability to engage in exercise/physical activity.

> **Count 4:** Fourteenth Amendment due process claim and/or Eighth Amendment conditions claim against Revell, Conners, and the John Doe Defendants (#1-3) for transferring Plaintiff to Marianna where he could not participate in the GDOP and was subjected to harsh conditions.

The parties and the Court will use these designations in all future pleadings and orders,

unless otherwise directed by a judicial officer of this Court. **Any other claim that is**

**mentioned in the Complaint but not addressed in this Order should be considered**

**dismissed without prejudice as inadequately pled under the *Twombly* pleading**

standard.[4]

## Count 1

Plaintiff asserts that Defendants' failure to take steps to either admit him to the GDOP at Greenville or transfer him to a prison where he could enter that program, as well as their failure to evaluate him for placement in a lower-security prison, general population, or PC, amounted to a due process deprivation. However, for the Due Process Clause of the Fourteenth Amendment to be applicable in this instance, Plaintiff must possess a protected liberty interest that is being infringed. *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976).

It is well established that no constitutional violation occurs when a prisoner is improperly classified. "[P]risoners possess neither liberty nor property in their classifications and prison assignments." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (due process protections are not implicated by prisoner classification within the BOP); *Meachum*, 427 U.S. at 224 (the Constitution does not guarantee placement in a particular prison). The Seventh Circuit has recognized that a prisoner "does not possess sufficient statutory or constitutional entitlement in his classification or eligibility for institutional programs to trigger due process protection." *Solomon v. Benson*, 563 F.2d 339, 342 (7th Cir. 1977) (citing *Moody*, 429 U.S. at 88). The *Solomon* court held that

---

[4] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

an inmate who sought to challenge his classification as a "special offender" has no right to procedural due process, notwithstanding the adverse effects on his eligibility for transfers, furloughs, and minimum security programs. *Solomon*, 563 F.2d at 343 (overruling in part *Holmes v. U. S. Bd. of Parole*, 541 F.2d 1243 (7th Cir. 1976)). *See also Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976) ("the control and management of federal penal institutions lies within the sound discretion of the responsible administrative agency, and judicial review [of an inmate's prison classification] will be granted only upon a showing that prison officials have exercised their discretionary powers in such a manner as to constitute clear abuse or caprice").

Here, Plaintiff complains that Hodges denied him entry to the GDOP, Smith dissuaded him from pursuing the GDOP, and that Serio and the NGIC agent delayed his GDOP application. Bowers ignored his transfer requests; and Bowers and other Greenville Defendants did not conduct evaluations that might have led to a transfer and a return to general population. None of these actions suggests abusive or capricious exercise of these officers' discretion. Some of the actions might amount to negligence, but negligence does not violate the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

Plaintiff does not explicitly state the reason for his placement in the SHU. His self-described status as a former gang member who has assisted the government, and his fear of harm from other inmates due to this status, suggests that he may have been housed there for his own protection. Indeed, he indicates that he was transferred away from

7

Greenville due to threats of violence from another inmate.[5] The claim in Count 1 boils

down to Plaintiff's dissatisfaction with Defendants' failure to address his safety concerns

in a manner Plaintiff would have preferred over his confinement in the SHU. Prison

officials have a constitutional responsibility to protect inmates from harm, but Plaintiff

does not have a constitutional right to choose his prison placement or to be admitted to

programs such as the GDOP.

For these reasons, Count 1 shall be dismissed without prejudice for failure to state

a claim upon which relief may be granted.

### Count 2

Similarly, Plaintiff has not stated a viable due process claim for his 27-month

placement in the SHU, which is a form of administrative segregation (in contrast to

disciplinary/punitive segregation). Continued confinement in administrative detention

does not implicate a constitutionally protected liberty interest. *Crowder v. True*, 74 F.3d

812, 814-15 (7th Cir. 1996). Although Plaintiff was subjected to more burdensome

conditions while in the SHU, those conditions—including restricted visitation, email,

telephone, library, religious services,[6] and prison job access—are "within the normal

limits or range of custody which the conviction has authorized the [government] to

---

[5] Plaintiff provides no detail regarding these threats, and nowhere does he state that he was attacked or harmed by another inmate while at Greenville.

[6] A denial of access to religious materials or services may amount to a constitutional violation, but Plaintiff does not assert that he was deprived of the ability to practice his faith or that prisoners in the SHU belonging to other faiths had more favorable access to religious privileges. As to the library restrictions, Plaintiff does not claim that the denial of library access caused him to be unable to pursue a meritorious claim or defense in a legal action which might amount to a denial of access to the courts.

impose." *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer of inmates to prison with more burdensome conditions of confinement not a violation of due process); *see also Sandin v. Conner*, 515 U.S. 472, 477 (1995). The administrative detention Plaintiff describes does not constitute a "grievous loss" of liberty, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), an atypical and significant hardship on the prisoner generally in relation to the ordinary incidents of prison life, nor a dramatic departure from the basic conditions or duration of the prisoner's sentence. *Sandin*, 515 U.S. at 481-85.

Count 2 shall be dismissed without prejudice because Plaintiff's administrative segregation at Greenville did not violate his due process rights.

### Count 3

Plaintiff does not invoke the Eighth Amendment in the First Amended Complaint. However, his allegation that he suffered back and knee problems as a result of his inability to engage in sufficient exercise or physical activity during his 27-month placement in the SHU may amount to a constitutional violation.

The Eighth Amendment's prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Relevant to Plaintiff's allegations, a denial of exercise privileges may amount to an Eighth Amendment violation. *See Turley v. Rednour*, 729 F.3d 645, 652-53

(7th Cir. 2013) (the plaintiff stated Eighth Amendment claim where cumulative effect of repeated lockdowns deprived him of yard privileges, and cell was too small for physical activity); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Lack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened."); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), *cert. denied*, 479 U.S. 817 (1986).

Notably, in a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. Here, Plaintiff has sufficiently alleged the objective element. But the Complaint does not indicate who among the Defendants was aware of Plaintiff's physical problems stemming from his inability to engage in physical activity, yet failed to act to mitigate the danger to his health. For this reason, Count 3 does not state a cognizable Eighth Amendment claim and will be dismissed without prejudice.

If Plaintiff wishes to pursue this claim, he must amend his Complaint yet again to identify the Defendant(s) who knew that he was being deprived of sufficient exercise while he was in the SHU. Plaintiff should explain, for example, whether he complained

10

to any Greenville official(s) about his ailments or requested more recreation/exercise time, and he should outline the official(s) response.

## Count 4

Plaintiff's assertion that Revell, Conners, and the John Doe Defendants (#1-3) violated his due process rights by transferring him to Marianna fails for the same reasons discussed under Count 1. There is no liberty or property interest in a particular prison placement, thus an inmate is not entitled to any process in connection with the decision to transfer him/her to a different institution. *See Montanye v. Haymes*, 427 U.S. 236 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992).

Plaintiff also alleges that he was subjected to harsh conditions and restricted privileges after his transfer to Marianna. Because those deprivations took place in Florida, they will not be addressed here. If Plaintiff wishes to pursue the conditions claims, he must bring a separate action in the Florida federal district court where the alleged deprivations occurred.

Count 4 shall be dismissed without prejudice.

## DISPOSITION

**IT IS HEREBY ORDERED** that Counts 1-4 and the First Amended Complaint (Doc. 15) are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A. Defendants John Doe #1, John Doe #2, John Doe #3, Revell, and Conners are **DISMISSED** from the action without prejudice.

**IT IS FURTHER ORDERED** that if Plaintiff wishes to proceed with the Eighth

Amendment claim in Count 3, he **SHALL FILE** his Second Amended Complaint **on or before April 12, 2021**.

When preparing the amended complaint, it is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "Second Amended Complaint" and include Case Number 20-cv-321-NJR.

In the amended complaint, Plaintiff shall specify, *by name*,[7] each Defendant alleged to be liable, as well as the actions alleged to have been taken by that Defendant. Plaintiff should state facts to describe what each named Defendant did (or failed to do), that violated his constitutional rights. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint generally supersedes and replaces the previous pleadings, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the previous Complaints. Thus, the Second Amended Complaint must contain all the relevant allegations in support of Count 3 and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint. The Second Amended Complaint is subject

---

[7] Plaintiff may designate an unknown Defendant as John or Jane Doe but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

to review pursuant to 28 U.S.C. § 1915A.

If Plaintiff fails to file an amended complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed for failure to comply with a court order and/or for failure to prosecute. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A. Such a dismissal may count as one of Plaintiff's three "strikes" within the meaning of 28 U.S.C. § 1915(g). No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the Second Amended Complaint. Further, if the amended complaint fails to survive review under § 1915A, this may also count as a "strike."

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his location. This shall be done in writing and no later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 8, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**